**J. Ashlee Albies**, OSB No. 051846
Email: ashlee@albiesstark.com
**Maya Rinta**, OSB No. 195058
Email: maya@albiesstark.com
Albies & Stark LLC
1 SW Columbia St. Suite 1850
Portland, Oregon 97204
Telephone: (503) 308-4770

**Attorneys for Plaintiff**

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **STEVEN BLAYLOCK**, an individual,<br><br>        Plaintiff,<br><br>    v.<br><br>**STATE OF OREGON DEPARTMENT OF CORRECTIONS**; **ZOLTAN TEGLASSY** in his individual capacity; and **THOMAS BRISTOL** in his individual capacity,<br><br>        Defendants. | Case No.<br><br>**COMPLAINT**<br><br>42 U.S.C § 1983 Civil Rights Action - Violation of Eighth Amendment Right to be Free from Cruel and Unusual Punishment; Americans with Disabilities Act & Rehabilitation Act Violation; Negligence (state tort)<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1.

This is a civil rights action concerning defendants' deliberate indifference and refusal to properly treat an older man's broken leg, resulting in unnecessary and exacerbated harm. On April 6, 2021, Steven Blaylock felt a pop and tremendous pain in his right leg, and repeatedly asked for medical attention over the next three weeks. As early as April 27, defendants had an x-ray image of Blaylock's fractured tibia, x-ray technician findings providing that the bone was

PAGE - 1     COMPLAINT

**ALBIES, STARK & GUERRIERO**
**ATTORNEYS AT LAW**
1 SW COLUMBIA ST. #1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

fractured, and treatment notes indicating evidence of a tibia fracture and possible "displacement," meaning that the bone was misaligned. Despite this, Defendants did not transfer Blaylock to the hospital or emergency care, did not immobilize his leg, and did not give him appropriate accommodations. Instead, they gave Blaylock a walking boot and directed him to continue bearing weight on his broken leg. As a result, he suffered a second fracture, this time in his right fibula. Then, Defendants placed a hard cast on Blaylock's leg *while the bones were still misaligned and crooked*.  It was not until late August 2021 that Blaylock received surgical intervention and treatment from an outside provider. But, as a result of Defendants' conduct, Blaylock's leg did not heal properly and healing has been prolonged, he has had to undergo additionally corrective surgeries with more on the horizon, he has needlessly suffered additional pain, and has been unable to enjoy full and normal use of his leg to this day.

## JURISDICTION & VENUE

2.

This Court has jurisdiction over the subject matter of this Complaint under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4). Pendent jurisdiction is asserted for the separate state law claim under 28 U.S.C. § 1367.

3.

Venue is proper under 28 U.S.C § 1391 (b) because all events giving rise to this claim occurred in this judicial district, and all defendants reside in this judicial district. Specifically, all acts and practices alleged herein occurred in Salem, Marion County, Oregon.

## PARTIES

4.

Plaintiff Steven Blaylock is, and at all material times hereto was, a person in custody of the State of Oregon Department of Corrections ("ODOC"), primarily imprisoned at Oregon State Correctional Institution ("OSCI").

5.

Defendant Zoltan Teglassy was at all material times a medical provider at OSCI, acting under color of law, in the course and scope of his employment with ODOC, and is sued in his individual capacity.

6.

Defendant Thomas Bristol was at all material times a medical provider at OSCI, acting under color of law, in the course and scope of his employment with ODOC, and is sued in his individual capacity.

7.

Defendant State of Oregon, Department of Corrections ("ODOC") is an agency and entity of the State of Oregon. At all material times, Defendant acted through agents and employees who at all material times acted within the course and scope of their employment or duties. As a public body, the state is liable for the wrongful acts of or conduct of its agents and employees pursuant to ORS § 30.260(4) and ORS § 30.265(1).

8.

Blaylock provided Defendant ODOC with timely notice of his claims pursuant to the Oregon Tort Claims Act, ORS § 30.275.

**FACTUAL ALLEGATIONS**

9.

Blaylock is a 59-year-old man and is incarcerated at OSCI.

10.

On or around April 6, 2021, Blaylock felt something pop in his right ankle or lower leg while he was running on the track in the OSCI yard. He experienced pain, swelling, and could barely walk. Almost immediately after the incident, and on multiple occasions in the following

/ / /

PAGE - 3    COMPLAINT

**ALBIES, STARK & GUERRIERO**
ATTORNEYS AT LAW
1 SW COLUMBIA ST. #1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

weeks, Blaylock notified ODOC that he required medical attention and that he could not walk properly, including through letters or "kytes" to prison officials.

11.

On or around April 16 or 21, 2021, at least one ODOC provider told Blaylock he had a sprain or a torn tendon, noting in their treatment notes that there had been "right ankle swelling" for two weeks "from running[.]" ODOC Doctor Thomas Bristol apparently reviewed Blaylock's medical issue on April 23, 2021, but did not talk to Blaylock and did not provide any treatment in response.

12.

Three weeks later on approximately April 27, 2021, Blaylock was treated by ODOC Doctor Zoltan Teglassy and Bristol. Bristol referred Blaylock to get an x-ray of his leg. The x-ray's written "findings" document provided that Blaylock had suffered a "transverse fracture across the metaphysis of the distal tibia" and the perpendicular fracture was clearly visible in the x-ray image. Teglassy specifically noted in Blaylock's treatment notes that the x-ray showed "evidence of distal tibia fracture" and "possible displacement" meaning that the bone was possibly not aligned.

13.

As such, as late as April 27, 2021, Defendants knew or should have known that Blaylock's right tibia was broken, and that continued walking or weight-bearing on his broken tibia would interfere in proper healing as well as place added pressure to the right fibula bone.

14.

Despite the x-ray image and findings that Blaylock had a broken leg and the bone was not aligned, Teglassy, Bristol, and/or ODOC provided Blaylock only with a walking boot and Prednisone. Blaylock asked Teglassy if he should have crutches, and Teglassy told him that he did not need crutches. Indeed, Defendants did not provide Blaylock with crutches, a wheelchair,

PAGE - 4    COMPLAINT

**ALBIES, STARK & GUERRIERO**
ATTORNEYS AT LAW
1 SW COLUMBIA ST. #1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

or any additional equipment to accommodate his broken leg. Instead, Teglassy told Blaylock that he should continue putting weight on his right leg.

In addition, Defendants did not provide Blaylock with any other medications or medical restrictions to accommodate his broken leg. So, Blaylock was forced to keep walking on the broken leg, using stairs, and climbing up to his top bunk. Defendants did not provide Blaylock with any prescriptions for pain medication; did not refer Blaylock to the hospital or any emergency or urgent care; did not immobilize, set, or cast his broken leg; and did not provide him with any medical restrictions.

15.

On or around May 27, 2021, ODOC's Bristol referred Blaylock to get another x-ray. Once again, the x-ray "findings" and images showed three views of Blaylock's right ankle with a "fracture of the distal tibia." Bristol signed his signature on these findings and dated it June 2, 2021, but apparently did not provide any medical treatment to Blaylock in response. However, Defendants did not provide any medical treatment at the time: they did not refer him to the hospital or emergency or urgent care; they did not offer him crutches or a wheelchair; they did not provide him with any medical restrictions such as a limitations on walking, use of the stairs, or climbing to his top bunk; and they did not provide him with any prescriptions for pain medication.

16.

Due to Defendants' lack of adequate medical treatment and failure to provide accommodations, Blaylock's leg remained broken and his condition worsened. ODOC ordered another x-ray which was taken on or around June 24, 2021. The x-ray "findings" compared the views of Blaylock's right ankle to those x-ray images taken the month prior, and provided: "There is **again noted to be a fracture** of the distal tibia" and that "[t]his [the fracture] was **seen on the May exam and appears unchanged**." (emphasis added). Bristol reviewed these

PAGE - 5   COMPLAINT

**ALBIES, STARK & GUERRIERO**
ATTORNEYS AT LAW
1 SW COLUMBIA ST. #1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

findings no later than July 2, 2021. Despite this, Defendants did not provide any medical treatment or accommodations to address Blaylock's still-broken leg. Instead, Defendants directed Blaylock to continue bearing weight on the broken leg.

17.

As a result of Defendants' actions and inactions, for more than three months after he broke his leg, Blaylock was encouraged and required to continue trying to walk on a broken leg and otherwise engage in his daily activities—including walking, using stairs, and climbing to his top bunk—without any adequate accommodations including medical restrictions or pain medication.

18.

Blaylock suffered significant pain from walking on the untreated and broken leg without accommodations, which limited his use of and access to ODOC services and activities. For example, Blaylock was forced to work less in his job as an Orderly, because it required walking around the unit and lifting or carrying items, which he could not do; he could not play sports or engage in other similar activities; he could not often walk to get supplies; he could not go to the Chow Hall without suffering intense pain from walking and so at times was forced to skip meals altogether; he could not carry anything up and down stairs; and he could not continue to engage with or support club activities as had done previously.

19.

Then, on around July 19, 2021, Blaylock's right *fibula* snapped when he was walking the yard. On information and belief, Blaylock's right fibula fractured because he was walking and bearing weight on a broken and displaced right tibia, which placed too much of a weight burden on the fibula. The pain and impact of this second fracture was so debilitating that Blaylock primarily could only move by crawling.

/ / /

PAGE - 6    COMPLAINT

ALBIES, STARK & GUERRIERO
ATTORNEYS AT LAW
1 SW COLUMBIA ST. #1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

19.

The next day, on or around July 20, 2021, ODOC provided a medial check and Bristol referred Blaylock to get yet another x-ray. That x-ray "findings" page provided "the distal tibial fracture *is again noted*," provided there was no sign to suggest significant healing, and that "the distal fragment now appears to have increased in angulation with the foot more inverted." (emphasis added). The findings also provided "[o]f note is the presence of a *new fracture* of the distal fibular shaft" (emphasis added).

Bristol reviewed these findings, and he and Teglassy also treated Blaylock around this time. Although Defendants knew that Blaylock's tibia was still broken and he had suffered a *new fracture* of his fibula, Defendants did not provide him adequate medical treatment. For example, Defendants did not transfer him to the hospital or emergency or urgent care; did not refer him to a specialist; did not immobilize his leg; did not provide him with a wheelchair; and did not prescribe him any pain medication. Instead, Defendants finally gave him crutches and placed restrictions on Blaylock's climbing to his top bunk and use of stairs.

20.

A few days later, on or around July 23, Bristol saw Blaylock in person for the first time. Bristol put a hard cast on Blaylock's right leg.  However, Bristol cast Blaylock's broken leg while it was still crooked from the fractures. As such, the hard cast immobilized Blaylock's broken bones while they were not property aligned. Unsurprisingly, Blaylock's leg did not heal properly:

/ / /

/ / /

/ / /

PAGE - 7     COMPLAINT

**ALBIES, STARK & GUERRIERO**
**ATTORNEYS AT LAW**
1 SW COLUMBIA ST. #1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292



21.

A month afterward, on or around August 24, 2021 Bristol referred Blaylock for another x-ray. The x-ray "findings" noted that there "continues to be angulated transverse fractures of the distal tibia and fibula" and "no significant change in healing." Despite this, Defendants did not provide him with a wheelchair or a prescription for pain medication.

22.

It was not until August 26, 2021—over fourth months after the first fracture—that Blaylock finally received treatment outside of ODOC at Hope Orthopedics, which scheduled a follow-up appointment to treat his broken leg. In the September 20, 2021 visit, Hope Orthopedic

PAGE - 8    COMPLAINT

noted that Blaylock's distal tibia-fibula fracture was "unknown to his orthopedic care team." On or around February 25, 2022, Hope Orthopedics performed a surgery in order to try to correct and properly set Blaylock's crooked and broken bones. Hope Orthopedics' treatment including having Blaylock's leg in an external fixator to keep his bones aligned for proper healing.

23.

Since then and continuing to present, and as a result of Defendants' conduct including in not providing him timely and adequate medical care, Blaylock has suffered pain, his full healing has been delayed—including another fracture to his fibula; he has had to undergo additional surgeries and may need even more surgery to correctly set and heal his leg; and he still does not have full and proper function in his leg.

**FIRST CLAIM FOR RELIEF**
**(Eighth Amendment Violation – Deliberate Indifference - 42 U.S.C. § 1983**
**Individual Liability Against Defendants Teglassy and Bristol)**

24.

Plaintiff realleges and incorporates by reference the above paragraphs.

25.

It is clearly established law that people in prison have the right to be free from cruel and unusual punishments, and that a prison official's deliberate indifference to a substantial risk of serious harm or a serious medical need violates the Eighth Amendment.

26.

Plaintiff's broken leg is a serious medical need, and Plaintiff faced a substantial risk of serious harm including worsening and exacerbating this medical condition.

27.

Defendants were deliberately indifferent to Plaintiff's serious medical need and risk of serious harm including in the following ways: apparently disregarding the x-ray images and findings that Plaintiff's bone was fractured, failing or refusing to provide Plaintiff with crutches, a

PAGE - 9    COMPLAINT

ALBIES, STARK & GUERRIERO
ATTORNEYS AT LAW
1 SW COLUMBIA ST. #1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

wheelchair, or medical restrictions to limit the use of and weight on his broken leg; advising Plaintiff to continue bearing weight on the leg; failing or refusing to facilitate urgent care or emergency care for Plaintiff upon learning of the fracture of his tibia and later fibula; by placing a hard cast on Plaintiff's leg when his bones were still crooked and not aligned; and failing or refusing to recommend surgical intervention.

28.

Defendants' acts and failures to act directly and proximately caused Plaintiff's injuries, including bodily harm such as a continually broken leg, a second fracture, swelling, pain, and the inability to walk or move normally for an extended period of time, as well as emotional distress in an amount to be determined at trial.

29.

Defendants' acts and omissions were oppressive, malicious, reckless, or callously indifferent to Plaintiff's federally protected rights, or motived by an evil intent. Defendants should be assessed punitive damages in an amount decided by a jury to punish him and deter future similar conduct.

30.

Plaintiff is entitled to reasonable attorney fees and costs pursuant to 42 U.S.C § 1988.

### SECOND CLAIM FOR RELIEF
**(Americans with Disability Act - 42 U.S.C. § 12101 et. seq., and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 Against Defendant ODOC)**

31.
Plaintiff realleges and incorporates by reference the above paragraphs.

32.

The prisons comprising ODOC have been recipients of federal funds and are thus covered by Section 504's mandate, which requires recipients of federal monies to reasonably accommodate persons with disabilities in their facilities, programs, activities, and services.

/ / /

PAGE - 10   COMPLAINT

**ALBIES, STARK & GUERRIERO**
ATTORNEYS AT LAW
1 SW COLUMBIA ST. #1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

33.

The prisons comprising ODOC are public entities within the meaning of Title II of the ADA, and provide programs, services or activities to the general public. Title II of the ADA has essentially the same mandate as Section 504.

34.

Plaintiff is a qualified individual within the meaning of the ADA and meets the essential eligibility requirements for the receipt of the services, programs, or activities of ODOC. Specifically, plaintiff has a disability that "substantially limits one or more major life activities," including but not limited to the major life activities of standing, walking, lifting, and working.

35.

ODOC provides programs and services for Section 504 and ADA purposes to people who are incarcerated, including but not limited to housing, meals, medical and mental health treatment, recreation, and work and educational programs.

36.

The ADA and Rehabilitation Act also require that physically disabled prisoners have access to adequate medical care. Plaintiff was denied adequate medical care; ODOC failed to treat Plaintiff's broken tibia resulting in a broken fibula, additional pain, and subsequent surgical interventions.

37.

The ADA and Rehabilitation Act also require ODOC to accommodate people with disabilities in a manner which allows them to participate in the same programs, services, and activities as non-disabled people.

35.

Plaintiff required reasonable accommodations, including but not limited to appropriate medical equipment and medical restrictions, in order to participate in the programs, services,

PAGE - 11   COMPLAINT

**ALBIES, STARK & GUERRIERO**
ATTORNEYS AT LAW
1 SW COLUMBIA ST. #1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

and activities of the prison, including, for example: getting into his bed, sleeping, working, eating meals, recreation, exercise, and other programs and services. ODOC was on notice of Plaintiff's need for reasonable accommodations, and it was obvious that Plaintiff needed accommodations to participate in programs, services, and activities alongside non-disabled people.

38.

As alleged above, ODOC was deliberately indifferent to Plaintiff by failing or refusing to provide Plaintiff with adequate medical treatment, as well as reasonable accommodations such as medical equipment like crutches or a wheelchair, and/or medical restrictions such as restrictions on walking, restrictions on using the stairs, and providing him a bottom bunk so that he did not have to climb to a top bunk in order to sleep. ODOC denied Plaintiff the rights and benefits accorded to non-disabled prisoners.

39.

As a direct and proximate result of ODOC's conduct, ODOC discriminated against Plaintiff on the basis of his disability in violation of the ADA and Rehabilitation Act, causing him to suffer painful prolonged broken bones, severe pain and suffering for many months, emotional distress, and lack of access to programs and services.

40.

Plaintiff is entitled to economic and non-economic damages in an amount to be determined at trial, and for plaintiff's attorneys fees and costs pursuant to 29 U.S.C. § 794a(b) and 42 U.S.C. §§ 12205 and 1988.

**THIRD CLAIM FOR RELIEF**
**(Negligence – State Tort – Against Defendant ODOC)**

41.

Plaintiff realleges and incorporates by reference the above paragraphs.

/ / /

/ / /

PAGE - 12    COMPLAINT

**ALBIES, STARK & GUERRIERO**
ATTORNEYS AT LAW
1 SW COLUMBIA ST. #1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

42.

Defendants owed Plaintiff a duty of care, and Defendant ODOC through its agents and employees of breached that duty of care and were negligent, including by: failing to transport Plaintiff to emergency care, urgent care, or an orthopedic specialist upon learning of his broken tibia, failing to transport Plaintiff to emergency care, urgent care, or an orthopedic specialist upon learning of his broken fibula, failing to timely provide Plaintiff with crutches, failing to set, brace, or immobilize his broken leg, providing Plaintiff with a hard cast while his bones were crooked and not properly aligned, and failing to Provide plaintiff with a wheelchair.

43.

Defendant ODOC's agents and employees knew, or should have known that their acts and omissions would result in a foreseeable risk of harm to Plaintiff, and their conduct was unreasonable in light of the risk of harm to Plaintiff.

44.

In performing the above-described acts, Defendant directly and proximately caused Plaintiff to suffer bodily harm and emotional distress in an amount to be determined at trial.

45.

Defendant acted with malice and/or demonstrated a reckless and outrageous indifference to a highly unreasonable risk of harm and has acted with a conscious indifference to the health, safety, and welfare of others. Accordingly, Plaintiff reserves the right to seek punitive damages pursuant to ORS 31.725 and ORS 31.730.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for his costs and disbursements incurred herein and for the following in accordance with the proof at trial:

1. Economic damages,

2. Non-Economic damages,

PAGE - 13   COMPLAINT

**ALBIES, STARK & GUERRIERO**
ATTORNEYS AT LAW
1 SW COLUMBIA ST. #1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

3. Punitive damages,

2. Prejudgment and post judgement interest as appropriate and allowed by law,

3. On all claims, as applicable, amounts necessary to offset the income tax consequences of receiving a lump sum payment, rather than receiving payment of wages over the applicable time frame; and

4. Any other relief the court deems proper.

**DATED** this 6th day of April 2023.

s/ *Maya Rinta*
Maya Rinta, OSB No. 195058
J. Ashlee Albies, OSB No. 051848

*Attorneys for Plaintiff*

PAGE - 14    COMPLAINT

**ALBIES, STARK & GUERRIERO**
**ATTORNEYS AT LAW**
1 SW COLUMBIA ST. #1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292